# COLBERT *v.* ANACOSTIA & POTOMAC RIVER RAILROAD COMPANY.

EVIDENCE; NEGLIGENCE; RELEASE; QUESTIONS FOR JURY; FAILURE TO CALL WITNESS.

1. The trial court can properly withdraw a case from the consideration of the jury only when, conceding the truth of the testimony offered by the party having the burden of the issue, and giving effect to every legitimate inference that may be deduced therefrom, it is plain that the party has not made out a case sufficient in law to entitle him to a verdict. If fair-minded men might honestly draw different conclusions from the evidence, it must be submitted to the jury for consideration, under proper instructions as to the law governing the case.
2. A plaintiff in an action for personal injuries against whom a release is pleaded is entitled to have the case submitted to the jury on her testimony that, while alone and suffering pain and incapable of judging the extent of her injuries, the defendant's claim agent gave her a sum of money, presented a paper which she was led to believe was not a release, and to which her mark was affixed, and that she does not remember touching the pen. (Referring to *Chesapeake & O. R. Co.* v. *Howard,* 14 App. D. C. 262; *Rockwell* v. *Capital Traction Co.,* 25 App. D. C. 98, 4 Ann. Cas. 648; *Baltimore & O. R. Co.* v. *Morgan,* 35 App. D. C. 196; and *Washington R. & Electric Co.* v. *McLean,* 40 App. D. C. 465.)
3. Any inference from the failure of a plaintiff in an action for personal injuries to call as a witness her daughter, whose name appears as that of a witness on a release alleged to have been signed by the plaintiff, is one for the jury to make, and not one for the court.

No. 2547. Submitted November 3, 1913. Decided December 1, 1913.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action brought to recover damages for personal injuries.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This action was brought by Caroline Colbert to recover damages of the Anacostia & Potomac River Railroad Company for personal injuries sustained through the negligence of defendant's conductor.

The declaration alleged that plaintiff was a passenger on a car of defendant on February 11, 1911. That plaintiff wished to alight, and the car came to a full stop. That while she was in the act of alighting, the conductor negligently caused the car to start. That, in consequence, plaintiff was thrown violently upon the ground, sustaining injuries to her spine, hip, and ribs, and internally, of a permanent character.

In addition to the general issue, defendant pleaded a release by plaintiff for a valuable consideration.

Plaintiff joined issue on the pleas, and replied to the plea of release that the same had been procured by fraud.

Defendant admitted that its car upon which plaintiff was a passenger started while she was endeavoring to alight therefrom. It also admitted that plaintiff had, before the commencement of the action, tendered to defendant the sum of $20, which was the consideration for the release pleaded, and which sum defendant had declined to accept.

Plaintiff testified that, as a result of her injuries, she had been confined to her bed for two weeks, and was unable to leave her room for three months; after that she had to walk with a cane. A representative of the defendant called the next morning after the accident at the house of a daughter of plaintiff, with whom she was living. Plaintiff was in bed at the time. She had spent the night in agony, and was suffering terribly. The representative told her, from what the conductor said, he had not expected to find her in bed. She replied: "I am in

great agony, and am not able to sit up." He said: "Whose fault was it?" She said: "It was the conductor's fault." He said: "Must I discharge him?" She said: "No, he may be a poor man and have a family of little children, and to discharge him will not help my suffering." She said: "I am suffering terribly, and I don't know my condition until the doctor comes." "Was in great agony, and not able to talk business to anyone." "He had a paper in his hand, but didn't read it. Said "for me to make my mark; if I couldn't write, to touch the pen; but I don't remember touching the pen." "Didn't remember making any mark because she was in such agony; that he gave her $20, but she did not know what he gave it to her for, as he hadn't told her; thought that he gave it to her to save the conductor." The doctor had not been there, and did not come until late in the evening. Cross-examined, plaintiff said she would not recognize the man if she saw him again. Her daughter opened the door and let the man in the house. He asked how the accident happened, and she told him it was the conductor's fault. She repeated the conversation given in her direct examination, as to the discharge of the conductor, etc. "The man did not tell her why he was giving her this money, but plaintiff thought it was to save the conductor; he stood by plaintiff with the paper in his hand, but did not read it; nobody was in there when plaintiff touched the pen; her name was not signed; that she was unable to read; nobody was in the room but she and the man; when her daughter came up, the man had left the room." She stated that she told the man how she was injured, and who her doctor was. "Only remembered a few things; was in such agony, and in no condition to talk business." "Did not know whether she saw the paper before; the man stood over her and told her to touch the pen, but she did not know whether she did or not." "The man did not tell her the paper was a release of the company from all claim; didn't ask the man to read the paper; didn't ask what the paper was she was signing; he didn't tell her she would have to have a witness to her signature; the man did not call her daughter from downstairs. The daughter came in while the man was going out of the room. The daughter

didn't come into the room and write plaintiff's name to the release." She said she thought she was getting the money to save the conductor from being discharged. Asked if she thought he was bribing her to keep her from complaining against the conductor, she answered, "Yes."

Witness sent a letter on Sunday for the man to come and see her and explain why he gave her the money.

Counsel of defendant asked plaintiff's counsel if the daughter was in court. The reply was yes, but that she would not be called as a witness.

Defendant called as a witness William H. Flannery, who gave testimony tending to prove that he was a special agent of the defendant for eleven years, investigating and adjusting claims; that in the performance of his duties, he went to see the plaintiff on the 10th of February, 1911, on D Street, S. E.; that her daughter let him in and showed him upstairs where the plaintiff was in bed. Plaintiff told him she was not seriously hurt; that she was a little sore across the shoulder and neck; seemed to think the conductor was at fault; witness told plaintiff he had not seen any of the witnesses, but was willing to assume that what plaintiff said was the truth; as she was not badly hurt, witness would be willing to settle the case with her; finally agreed to settle for $20; said plaintiff told him she was not able to write, but would make her mark. Thereupon witness called the daughter from downstairs, who said she knew about the accident. Whereupon, the following happened, according to witness: "' * * * I have agreed to pay her $20, and she has agreed to accept it; but she cannot write, so I would like you to write her name and let her put her mark here, and then you sign as a witness.' Then she did that, and I paid her the money; and I said to her, 'This releases the railroad company from any further obligation,' and the old lady said she understood that perfectly well. That was the whole case."

Witness further said that he told plaintiff nothing about discharging the conductor; that he did not remember that there was any talk about this; that witness did not remember that plaintiff said she did not want the conductor discharged; the

$20 was not given to prevent the conductor from being discharged; read the paper to the plaintiff, same paper presented in court; before the witness asked plaintiff to make her mark, he explained to her what it meant: "This releases the railroad company from any further claim," to which plaintiff agreed; says her daughter came into the room, and wrote the name of the plaintiff, and also the cross mark in between, and also witnessed the paper in the name of Mrs. Gertrude Thompson, which witness said she signed, and also signed plaintiff's name and signed hers as witness; that Mrs. Thompson, the daughter, came into the room before the paper was executed.

Witness said he did not misrepresent the release in any way to the plaintiff, but explained to her the purport of the paper, and what it meant; that he read it over to her and explained it afterwards, and he also denied that he told plaintiff the $20 was to keep the conductor from being discharged.

Defendant then read the release. It, in usual form, released defendant from all demands on account of the accident, and recited a consideration of $20 as paid and received. It is signed with the mark of the plaintiff, and purported to be witnessed by Mrs. Gertrude Thompson and William H. Flannery.

On cross-examination, witness said he had seen a report of the accident prior to the interview and had read a report of the crew, but had not seen report of the witnesses whose names were obtained by the crew; said he told plaintiff he assumed what she told him was the truth, and was correct; also testified that he knew plaintiff's statement was correct when he went there; said the daughter did not go to the room of the plaintiff with him, and did not come to the room until witness called her up to witness the paper; did not call her up until after he had the conversation with the plaintiff, and then asked the daughter to come in and witness the paper; that that was just about what happened; denied that he had any conversation with the plaintiff about the conductor; did not leave a copy of the paper with her, saying he never did so; said plaintiff was lying in bed when witness came; said he never received any message from plaintiff after his call; said he was in the house about twenty-

five minutes, and that during that period Mrs. Thompson was downstairs and witness simply called her up to put her name as a witness to the release.

On redirect examination, witness further testified that he had not seen the motorman or conductor before the interview and conversation.

The court, at the request of defendant, directed a verdict for it on account of the insufficiency of the plaintiff's evidence.

*Mr. E. Hilton Jackson,* for the appellant:

1. The court erred in directing a verdict for the defendant. *B. & O. R. Co.* v. *Morgan,* 35 App. D. C. 205, 206; *Washington R. & Electric Co.* v. *McLean,* 41 Wash. L. Rep. 420; *Union P. R. Co.* v. *Harris,* 158 U. S. 326.

*Mr. J. J. Darlington* and *Mr. George P. Hoover,* for the appellee:

1. There was no evidence on which to predicate fraud. *Baltimore & O. R. Co.* v. *Morgan,* 35 App. D. C. 195, 204; *Railroad Co.* v. *Belliwith,* 83 Fed. 437, 440; *Heck* v. *R. Co.* 147 Fed. 775, 779.

2. The failure of the appellant to call her daughter as a witness raised a strong presumption of law that, if the daughter of the appellant was called as a witness, her testimony would have been unfavorable to the contention of the appellant. *Gallagher* v. *Hastings,* 21 App. D. C. 88, 97; *People* v. *Hovey,* 92 N. Y. 554, 560; *Toomey* v. *Lyman,* 15 N. Y. Supp. 883, 885; *Carpenter* v. *Pennsylvania R. Co.* 13 App. Div. 328, 330; *Western & A. R. R. Co.* v. *Morrison,* — Ga. —, 40 L.R.A. 84, 85.

3. There was no sufficient evidence in this case which would entitle the appellant to have the question submitted to the jury for its determination. *Patton* v. *Texas & P. R. Co.* 179 U. S. 658; *Coughran* v. *Bigelow,* 164 U. S. 301, 307; *Railroad Co.* v. *Diffendaffer,* 125 Fed. 893, 895; *Telegraph Co.* v. *Baker,* 140

Fed. 315, 319; *Swift* v. *Johnson,* 138 Fed. 867, 874, 875; *International Text Book Co.* v. *Heartt,* 136 Fed. 129, 133; *First Nat. Gold Min. Co.* v. *Altvater,* 149 Fed. 393, 397; *Railroad Co.* v. *Belliwith,* 83 Fed. 437, 440; *Turnbull* v. *Ross,* 141 Fed. 649, 650; *Riley* v. *Railroad Co.* 133 Fed. 904, 905-906; *Railroad Co.* v. *Roddy,* 131 Fed. 712, 713; *Pleasants* v. *Fant,* 22 Wall. 116, 122; *Hunt* v. *McNamee,* 141 Fed. 293, 299; *Ross* v. *Washington R. & Electric Co.* 39 App. D. C. 591, 594.

Mr. Chief Justice Shepard delivered the opinion of the Court:

It is the province of the jury to determine the credibility of the witnesses and the weight to be given to their testimony. The court can only withdraw a case from their consideration when, conceding the truth of the testimony offered by the party having the burden of the issue, and giving effect to every legitimate inference that may be deduced therefrom, it is plain that the party has not made out a case sufficient in law to entitle him to a verdict. If fair-minded men might honestly draw different conclusions from the evidence, it must be submitted to their consideration under proper instructions as to the law governing the case. These principles are so well settled that no citation of authority is necessary. Tested by them, we are of the opinion that it was error to direct the verdict for the defendant. The question, as it arises here, must be determined by the testimony of the plaintiff alone, in the light of the necessarily assumed truth, and every legitimate inference that may be deduced from it. Without reviewing that testimony, we shall content ourselves with a general statement of the surrounding circumstances as testified to by the plaintiff.

The accident occurred late in the afternoon. The defendant, having the reports of its employees respecting the occurrence, and a knowledge of the facts relating to its liability, upon which it admitted negligence at the trial, sent its claim agent, early the next morning, to obtain plaintiff's release. She was in bed suffering great pain from the injuries received. Her med-

ical adviser had not then paid his daily visit. She was not able to judge the extent of her injuries. She could neither read nor write. No relative, friend, or adviser was present. The instrument was not read or explained to her. The inquiries and statements of the claim agent led her to believe that the release and the money received were for the purpose of preventing the discharge of the conductor whose negligence caused her injuries. Considering those injuries and the admitted negligence of the conductor, the amount offered her was ridiculously small. She was in such pain that she did not remember touching the pen when her mark was made. If the jury should believe all of her statements, notwithstanding the facts and circumstances that may be offered in rebuttal, we are not prepared to say that they could, as fair-minded men, come to no other conclusion than that there had been a meeting of the minds of the contracting parties at the time, and that the plaintiff had executed the release without deception and mistake of its true character and effect.

In view of the new trial that may be had, the foregoing statement is sufficient. Though none of the following decisions is directly in point, they discuss the applicable principles, and support the conclusion. *Chesapeake & O. R. Co.* v. *Howard*, 14 App. D. C. 262, s. c. 178 U. S. 153, 167, 44 L. ed. 1015, 1020, 20 Sup. Ct. Rep. 880; *Rockwell* v. *Capital Traction Co.* 25 App. D. C. 98, 116, 4 Ann. Cas. 648; *Baltimore & O. R. Co.* v. *Morgan*, 35 App. D. C. 196, 205; *Washington R. & Electric Co.* v. *McLean*, 40 App. D. C. 465, 471.

It has been argued that the failure of the plaintiff to call her daughter, who was present in court, as a witness, raises a strong presumption of law against the plaintiff. The daughter's name appears as a witness to the release. Plaintiff undertakes to excuse this failure on the ground that her testimony shows that the daughter was not present during the interview; and further argues that it was for the defendant to call the witness to contradict plaintiff, and corroborate the claim agent.

It would be more satisfactory had the plaintiff introduced the daughter's evidence; but be this as it may, the question that

D. C.]                          Syllabus.

we have to determine turns upon the legal sufficiency of the
testimony actually produced before the jury, and not upon
what might have been produced.

Any inference of fact that may be deduced from the circum-
stance is for the jury, and not for the court.

For the reasons given, the judgment is reversed, with costs,
and the cause remanded for another trial.          *Reversed.*